[L. A. No. 4155.   Department Two.—April 15, 1918.]

## ESTHER A. KINSEY, Respondent, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Appellant.

ACCIDENT INSURANCE—ACCIDENTAL DEATH BY DROWNING—INSTRUCTION AS TO CAUSE OF DROWNING.—In an action on a policy of accident insurance by which the defendant insured the one to whom the policy was issued (and who was drowned while the policy was in force) against "bodily injury . . . resulting directly, independently, and exclusively of all other causes in . . . death," the jury was properly instructed that if it found that the insured was drowned as the result of an accident, it was immaterial for the purpose of the case how he came to drown, provided the jury found that such drowning was the proximate result of accident.

ID.—INSTRUCTION AS TO WARRANTIES AND BREACH — LIMITATION TO BREACH SET UP AS DEFENSE.—Where the defense of the defendant on the ground of breach of warranty was based upon the sole ground of an alleged breach of the insured's warranty that he was in sound physical condition when he was in fact afflicted with heart trouble, the court correctly instructed the jury that in considering the question whether or not there was a breach of warranty, it should consider only evidence touching the allegation that the deceased was afflicted with heart disease.

ID.—EVIDENCE—CAUSE OF DEATH—EXPERT TESTIMONY—DISCRETION OF TRIAL JUDGE.—Whether or not life guards, who assisted in rescuing the body of the deceased from the surf and aided in efforts at resuscitation, were, by reason of their calling and the experience which they were shown to possess in rescuing and treating persons apparently drowned, qualified to express their opinion as to whether the appearance of the deceased was indicative of death by drowning, was a question for the determination of the judge, and in the absence of an abuse of discretion, his ruling should not be disturbed.

ID.—QUESTION OF FACT FOR JURY.—Where, in such case, there was expert testimony to the effect that the appearance of the body of the deceased was consistent with the fact that the death might have been due to apoplexy or heart failure, and there was also evidence tending to establish facts indicating that the death was due to drowning, it was the province of the jury to determine the question.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—ALLEGED BREACH OF WARRANTY.—A motion for a new trial on the ground of newly discovered evidence was properly denied, in such case, where the motion was based on an affidavit of a physician that in his opinion the physical

condition of the deceased indicated that prior to the time of securing the policy the deceased had suffered from an apoplectic stroke, since the only breach of warranty alleged in the answer was that he had suffered from heart trouble.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Louis W. Myers, Judge.

The facts are stated in the opinion of the court.

Goudge, Williams, Chandler & Hughes, and Goudge, Robinson & Hughes, for Appellant.

Edwin A. Meserve, and Shirley E. Meserve, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—On May 12, 1911, defendant issued to Edward W. Kinsey, who was the husband of plaintiff, a policy of insurance by which defendant agreed to and did insure said Kinsey against "bodily injury sustained during the term of the policy through accidental means (excluding suicide, sane or insane, or any attempt thereat, sane or insane) and resulting directly, independently and exclusively of all other causes in . . . death." Plaintiff, as beneficiary named in said policy, alleging the insured, while bathing in the surf, was accidentally drowned, on September 18, 1913, brought this action to recover the amount of the indemnity specified in the policy.

A trial was had before a jury, which rendered a verdict in favor of plaintiff for the sum prayed for in the complaint. Judgment followed, from which and an order denying defendant's motion for a new trial, it appeals.

In its answer defendant denied that the death of deceased was the result of accidental drowning, denied that any sum was due plaintiff under the terms of the policy, and affirmatively alleged that deceased in procuring the policy made certain warranties, among which was that he was in sound physical condition, whereas at the time of making such warranty he was afflicted with heart disease, which fact was at the time of the issuance of said policy unknown to defendant, who at all times believed and relied upon the representations so made by the insured, and that subsequent to the death of the insured, upon learning of the falsity thereof, tendered the

plaintiff the premiums theretofore received by it from deceased, which, being refused, were deposited in court.

Upon the issues joined, the questions involved were: 1. Did the death of the insured result from accidental drowning? 2. Did deceased, as alleged, misrepresent his physical condition? and, 3. Assuming these facts to be determined in favor of plaintiff, what amount is she entitled to recover under the terms of the policy?

In its brief appellant assigns as error the giving of certain instructions to the jury. Upon the hearing, it was conceded by counsel for appellant that its contention as to instruction No. 12 was without merit; and an examination of other instructions complained of, when taken in connection with and as a part of the entire charge given to the jury, shows that they are likewise without merit. By instruction No. 23 the court told the jury that if they found that Edward W. Kinsey was drowned as the result of an accident, it was immaterial for the purpose of the case how he came to drown, provided it found that such drowning was the proximate result of accident. The ultimate fact was that he was drowned as the result of accident. The nature of the accident which caused him to drown was immaterial, provided it constituted the proximate cause of the drowning.

By instruction No. 22 the jury was instructed that defendant by its answer had limited its defense based upon alleged breach of plaintiff's warranty that he was in sound physical condition to the claim that he was afflicted with heart trouble, and told the jury that evidence of any breach other than that so alleged was not evidence for its consideration in determining the question as to breach of warranty made. The giving of this instruction finds full support in the case of *Taylor* v. *Modern Woodmen of America,* 42 Wash. 304, [7 Ann. Cas. 607, 84 Pac. 867], and a number of authorities there cited, and is likewise approved in *Weber* v. *Ancient Order of Pyramids,* 104 Mo. App. 729, [78 S. W. 650], in both of which it is, in effect, held that where a certain specific breach of warranty is alleged, the defendant should be restricted to the specific charge of fault or wrong contained in the pleading. Otherwise, as stated in *Taylor* v. *Modern Woodmen of America, supra,* "no matter how many conditions precedent the contract contained, the plaintiff would be obliged to go to the expense of preparing to prove performance or waiver of every

one of them." The only breach of warranty alleged in the answer was that plaintiff at the time of procuring the policy was afflicted with heart trouble; and under the pleading the court correctly instructed the jury that in considering the question as to whether or not there was a breach of warranty, they should consider only evidence touching the allegation that deceased was afflicted with heart disease.

Defendant called as witnesses the life guards who assisted in rescuing the body of deceased from the surf and who aided in efforts to resuscitate him. They were asked questions, the purpose of which was to elicit their opinion based upon their observation of deceased as to whether the death of deceased was due to drowning. Objection was sustained to these questions and the ruling is assigned as error. The contention of appellant is that these life guards were, by reason of their calling and experience which they were shown to possess in rescuing and treating persons *apparently* drowned, qualified like a physician or surgeon to express their opinion as to whether the appearance of deceased was indicative of death by drowning. As to whether or not they were thus qualified was a question for the determination of the trial judge, and in the absence of an abuse of discretion disclosed by the record, his ruling should not be disturbed. The evidence, while perhaps showing that these witnesses were skilled in the methods of rescuing drowning persons from the water, fails to show that they had any knowledge, gained by experience or otherwise, upon which, from their observation of the appearance of the body of deceased, they were as a matter of law entitled to testify to their opinions as to the cause of the death of deceased. Indeed, as shown by this record, the question was one upon which men of long professional standing and experience differed.

It is next claimed that the evidence was insufficient to sustain the verdict. There is no merit whatsoever in this contention. While there was expert testimony to the effect that the appearance of the body of deceased was consistent with the fact that his death might have been due to other causes such as apoplexy or heart failure, it also clearly tended to establish facts which indicated that his death was due to drowning, and the jury, whose province it was to determine the question upon such conflict of evidence, so found.

It is likewise claimed that a new trial should have been granted on the ground of newly discovered evidence. This is based upon an affidavit made by a physician to the effect that in his opinion the physical condition of deceased prior to the time of securing the policy, as shown by the deposition of Emma Belle Badger, indicated that he had suffered from an apoplectic stroke. A mere statement of the fact upon which the contention is based shows that there was no abuse of discretion on the part of the trial court in refusing a new trial upon such ground. Moreover, the only breach of warranty alleged in the answer was that defendant had heart trouble.

The policy of insurance provided that if the premiums thereon were "payable quarter-annually or semi-annually in advance, then each year's premium paid after payment of the first year's premium, will increase said benefits five per cent until such increase is fifty per cent." It appears that the insured paid the second year's premium semi-annually in advance, by reason of which fact the benefit was increased five per cent during the second year. The amount specified in the policy was five thousand dollars, which, increased by $250, made the sum which plaintiff was entitled to recover under the terms of the policy, $5,250. By reason of an erroneous instruction, however, the jury fixed the amount due upon the policy at six thousand five hundred dollars. At the hearing of the case it was conceded by counsel for respondent that the judgment, based upon said verdict, was $1,250 in excess of the amount to which plaintiff was justly entitled.

It is therefore ordered that the judgment be, and the same is, modified by deducting therefrom, as of the date rendered, the sum of $1,250, and as thus modified the judgment is affirmed.

Melvin, J., and Wilbur, J., concurred.

On the seventh day of May, 1918, the court filed the following modification of the judgment:

VICTOR E. SHAW, J., *pro tem.*—The judgment heretofore given by this court is amended to read as follows, viz.:

"The judgment appealed from is modified by deducting therefrom $1,250 and interest thereon from November 1, 1913, to date of judgment amounting to $64, making a total of

$1,313.75, and as thus modified said judgment is affirmed. The order denying a new trial is affirmed. Appellant shall recover its costs on the appeal to the extent only of $50 for and on account of the printed transcript used in presenting the record, and $20 only for and on account of cost of printing briefs, making a total of $70 and $10 for filing transcript. Respondent shall recover as costs of printing briefs the sum of $50, and no other costs on these appeals."

Wilbur, J., and Melvin, J., concurred.